# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| G.M. SIGN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 5528 |
| | ) | |
| BRINK'S MFG. CO., | ) | Hon. Amy J. St. Eve |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On August 7, 2009, Plaintiff G.M. Sign, Inc., filed suit against Defendant Brink's Manufacturing Company, purporting to bring a class action on account of Defendant's alleged violation of the Telephone Consumer Protection Act ("TCPA" or "the Act"). (R. 1 at 6-15.) Brink's removed the case to this Court on September 4, 2009. On September 3, 2010, Plaintiff filed its amended motion for class certification. For the reasons explained below, the Court denies the motion.

## BACKGROUND

Plaintiff contends that Defendant sent it a faxed form advertisement without its prior express invitation or permission and, second, that that fax did not advise the recipient how to opt out of receiving future faxes. (R. 46 at 2.) According to Plaintiff, this action constituted a violation of the TCPA, which prohibits the use of "any telephone facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The Act provides an exception if "the unsolicited advertisement is from a sender with an established

business relationship with the recipient; the sender obtained the number of the telephone facsimile machine through the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, . . . and the unsolicited advertisement contains [an opt-out notice]." *Id.* G.M. Sign alleges, however, that there is no business relationship "of any sort" between it and Defendant, and submits further that Defendant did not contact Plaintiff to obtain its express authorization or permission to send an advertising fax. (R. 46 at 6.) Furthermore, Plaintiff asserts in its brief, though not in its Complaint, that the fax it received did not include the requisite opt-out notice. (R. 46 at 4.)

### A.    Evidence Regarding Prior Authorization

Defendant, however, has introduced evidence that it only sent faxes to (1) existing customers and (2) those prospective customers that had expressly agreed to receive Brink's product information in that fashion. (R. 55-1 at 2-4, 8-9, 15-16, 18, 20, 22.) More specifically, Brink's submits multiple affidavits to the effect that the company created an electronic database, known as "ACT," which included contact information for the company's actual and prospective customers. (*Id.*) This evidence provides that Brink's gathered information regarding the company's existing customers during the course of the relevant business relationships. (*Id.*) Furthermore, Defendant obtained information on prospective customers through phone disks and public sources like the Yellow Pages, although neither source generally contained fax numbers. (*Id.*) The evidence further supports that Brink's instead obtained those fax numbers by calling prospective customers, asking them whether they would be interested in receiving information about Defendant's products, and, if so, asking them for their fax numbers. (*Id.*) If any prospective customer declined Defendant's offer to send them information, Brink's avers that it

2

would "immediately remove that company from the ACT database." (*Id.*) Similarly, "[i]f the customer did not agree to receive information from Brink's by fax, in the unlikely event that [Brink's] had their fax number[,] [it] would remove it from the ACT database." (*Id.*)

Finally, Defendant has introduced evidence that Plaintiff not only expressed interest in receiving information on its products, but voluntarily provided Defendant with its fax number. (*Id.* at 2-4.) To counter this evidence, Plaintiff relies on the deposition testimony of Mr. George Matiasek, G.M. Sign's president and head of sales, who represented that he could not recall having received any kind of communication from Brink's.[1] (R. 47-6 at 6.) Mr. Matiasek also acknowledged, however, that, even if he had received a phone call, he would probably not remember at this later time. (*Id.*) Plaintiff further relies on the deposition testimony of Mr. David Peterson, president of Brink's, who stated that, to his knowledge, G.M. Sign never contacted Brink's for any reason. (R. 47-1 at 11.) Finally, Plaintiff cites the deposition testimony of Ms. Beverly Kelly, Plaintiff's secretary treasurer, who testified that she had not

---

[1] The factual assertions contained in Defendant's proffered affidavits are, of course, inconsistent with certain allegations of the Complaint. It is important to note that the information provided by the affidavits amounts to factual evidence. Contested allegations in a complaint, by contrast, do not. *See, e.g.*, *Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006) ("[M]ere allegations of a complaint are not evidence."); *Newman v. RCN Telecom. Servs., Inc.*, 238 F.R.D. 57, 72 (S.D.N.Y. 2006) ("In order to pass muster, plaintiffs—who have the burden of proof at class certification—must make 'some showing' that the class comports with Rule 23. That showing may take the form of, for example, expert opinions, evidence (by document, affidavit, live testimony, or otherwise), or the *uncontested* allegations of the complaint.") (quotations and emphasis omitted) (emphasis added); *Williams v. Long*, 558 F. Supp. 2d 679, 684 (D. Md. 2008) ("The paramount issue in determining the appropriateness of conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.' Accordingly, plaintiffs must make a preliminary factual showing . . . . This would include factual evidence by affidavits or other means, but mere allegations in the complaint would not suffice.") (citations, quotations, and emphasis omitted).

heard of Brink's before Plaintiff filed the lawsuit and that, as far as she was aware, G.M. Sign had not contacted Brink's before it sent the fax.  (R. 47-3 at 8, 11.)

**B.      Proposed Class**

G.M. Sign seeks to certify a class comprised of those who allegedly received junk faxes from Defendant under Federal Rules of Civil Procedure 23(a), (b)(3), and (g).  (R. 45.)  A disparity exists, however, between the class definition it proffers in its complaint, on the one hand, and in its memorandum in support of its amended motion for class certification, on the other.  The former definition is as follows:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes and (4) with whom Defendant did not have an established business relationship.

(R. 1 at 8, ¶ 16.)

In its subsequent memorandum in support of its motion, Plaintiff proposes the following class definition:

> All persons who (1) at any time during the period November 1, 2005 through February 28, 2006, (2) were sent one or more telephone facsimile messages of material advertising the commercial availability of Defendant's property, goods, or services, (3) did not give prior express invitation or permission to Defendant to send such faxes; or (4) gave Defendant prior express invitation or permission but were sent faxes without an opt-out notice on them.

(R. 46 at 9.)

Plaintiff submits that the latter proposed class meets the relevant certification requirements of Rule 23, specifically the numerosity, commonality, typicality, adequacy-of-representation, predominance, and superiority conditions.  (R. 45 at 1-3.)  Defendant argues that

G.M. Sign fails to meet the Rule 23(a) prerequisites of commonality and typicality, as well as the Rule 23(b)(3) requirements of predominance, superiority, and manageability. (R. 55 at 7-13.)

## LEGAL STANDARD

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)); *see also Ortiz v. Fireboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties.") (internal quotation omitted). It "is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. The two points are closely related. If every small claim had to be litigated separately, the vindication of small claims would be rare." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 744 (7th Cir. 2008); *see also Simer v. Rios*, 661 F.2d 655, 669 n.24 (7th Cir. 1981).

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001)); *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010), and "provides a one-size-fits-all formula for deciding the class-action question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, – U.S. –, 130 S. Ct. 1431, 1437 (2010). Courts should exercise caution, however, in certifying classes. *Thorogood*, 547 F.3d at 746. Indeed, "[t]he Supreme Court has made clear that a class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . .

indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *General Tel.*, 457 U.S. at 160-61); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003) ("Class certification requires a rigorous investigation into the propriety of proceeding as a class. . . ."). In deciding whether to certify a class, courts generally may not analyze a class's claims on the merits. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook Co.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). "'Failure to meet any of the Rule's requirements precludes class certification.'" *Harper*, 581 F.3d at 513 (quoting *Arreola*, 546 F.3d at 794). Satisfaction of these requirements, on the other hand, categorically entitles a plaintiff to pursue her claim as a class action. *See Shady Grove*, 130 S. Ct. at 1437. In certifying a class, a court "should endeavor to select the most appropriate subsection [of Rule 23(b)], not just the first linguistically applicable one in the list." *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). In its analysis of Plaintiff's class-certification motion, the Court "should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

## ANALYSIS

I.    **The Court Need Not Decide Which Class Definition Applies, as Plaintiff Fails to Meet its Burden of Proof under Either Definition**

As an initial matter, the Court must address the fact that Plaintiff proffers a proposed class definition in its motion that is inconsistent with the Complaint's purported definition. (*Compare* R. 1 at 8, ¶ 16 *with* R. 46 at 9.)  Defendant argues that "Plaintiff is bound by the class definition set forth in its Complaint."  (R. 55 at 5.)  Plaintiff contests this view, arguing that the Court may change the definition itself, *sua sponte*.  (R. 59 at 9 (citing *Green v. Serv. Master on Locations Servs. Corp.*, No. 07-CV-4705, 2009 WL 1810769, at *3-4 (N.D. Ill. June 22, 2009)).

District courts typically, though not invariably, hold a plaintiff seeking class certification to the definition espoused in the relevant complaint.  *Compare, e.g.*, *Clarke v. Baptist Mem'l Healthcare Corp.*, 264 F.R.D. 375, 381 (W.D. Tenn. 2009) ("To accommodate a new proposed class definition, plaintiffs will need to amend the complaint."); *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it."); *id.* at 604-05 n.6 (collecting cases); *Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 672 n.3, 680 n.10 (N.D. Ill. 1989) (As this Court observed earlier, the class definitions proposed in [plaintiff's] motion for class certification differs from that set forth in her complaint.  The Court has certified the class as originally proposed, but [plaintiff] may file an appropriate motion to amend both her complaint and the class definitions we have set forth here . . ..") *with Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 680 n.1 (S.D. Fla. 2008) (limiting its analysis to the class

definition set forth in the plaintiff's motion, rather than the different definition articulated in the complaint).

The Court need not now decide which class definition applies because Plaintiff fails to meet the standards of Rule 23 under either definition.[2]

## II.      Plaintiff Satisfies the Numerosity Requirement

Rule 23 requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties agree that Defendant sent between 1,000 and 1,100 advertising faxes, which Plaintiff alleges contravene the TCPA. (R. 46 at 11; R. 55 at 4.) A class of forty generally satisfies the numerosity requirement. *See, e.g.*, *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643-44 (N.D. Ill. 2002); *cf. Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006). The parties do not dispute that it would be impracticable to join upward of 1,000 plaintiffs to the present action. Thus, Plaintiff has met its burden of establishing that the proposed class meets the numerosity requirements. *See Slayton v. Iowa Coll. Acq. Corp.*, No. 09-CV-6977, 2010 WL 3937455, at *1 (N.D. Ill. Oct. 5, 2010) (noting that the party seeking class certification bears the burden of establishing that certification is proper) (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)).

## III.     Plaintiff Has Established Commonality and Typicality

In addition to establishing numerosity, Plaintiff has demonstrated commonality and typicality under Rule 23(a).

---

[2] The Court also points out that, if it were to employ the class definition proposed by Plaintiff's motion, that definition lacks a conjunction between element (2) and (3), such that the proffered definition appears to be deficient.

## A. Background Law Governing Commonality and Typicality

Rule 23(a)(2) requires that "questions of law or fact common to the class" exist. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)); *see also Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) ("The commonality requirement does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs, so the low commonality hurdle is easily surmounted.") (internal quotation omitted). "Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class," *Keele*, 149 F.3d at 594, and "[t]he fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017; *see also Chandler*, 162 F.R.D. at 307-08 ("It is well established . . . that the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant is engaged in standardized conduct toward the class.").

Typicality is closely related to commonality. *See Keele*, 149 F.3d at 594. As the Supreme Court has noted, the commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel.*, 457 U.S. at 158 n.13; *see also Mace*, 109 F.3d at 341 ("The typicality

and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class.").

The typicality element broadly requires "that the claims or defenses of the representative party be typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana*, 472 F.3d at 514 (quoting *Rosario*, 963 F.2d at 1018). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)); *see also Swanson*, 415 F.2d at 1333 (noting that "the utility of Rule 23 would be destroyed if a class action were denied simply because all of the allegations of the class did not fit together like pieces of a jigsaw puzzle" (internal quotation omitted)).

### B.     Plaintiff Has Established Commonality and Typicality Under Rule 23(a)

G.M. Sign submits that Defendant "engaged in a standardized course of conduct by sending advertising faxes to the recipients identified on its telephone bills," and identifies several common questions of law and fact.  (R. 46 at 11-12.)  These include "whether Defendant's fax form was an 'advertisement,' whether Defendant violated the TCPA by failing to obtain prior

express consent; whether Defendant violated the TCPA by failing to include an opt-out notice on its form fax; whether class members are entitled to statutory damages; and whether Defendant's acts were 'knowing' under the TCPA[,] entitling class members to treble damages." (R. 46 at 11-12.) Given these common questions, the Court finds that Plaintiff has met its burden to establish commonality under Rule 23(a)(2).

Plaintiff has similarly satisfied its burden to demonstrate typicality. Plaintiff's claim emanates from the same course of conduct that gives rise to the prospective class members' claims. The parties agree that Defendant sent between 1,000 and 1,100 advertising faxes between November 2005 and February 2006. (R. 46 at 11; R. 55 at 4.) G.M. Sign alleges that Defendant sent it one of those faxes without permission or invitation. (R. 1 at 8.) Plaintiff also alleges that Defendant sent the same or similar advertisements, in comparable manner, to other recipients who form the proposed class. (*Id.*) Plaintiff's claim is therefore typical of the claims of the proposed class. *See Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (observing that the typicality requirement is satisfied when "the named representatives' claims have the same essential characteristics as the claims of the class at large") (quoting *Da La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Brink's argues that Plaintiff has failed to establish typicality because, "[w]hile Plaintiff asserts that it had no business relationship with Brinks and never gave Brinks permission to send it fax advertisements, Plaintiff has failed to establish this for any other putative class member." (R. 55 at 10.) Defendant continues by arguing that it "has introduced evidence that shows that the subject faxes were sent to Brinks customers as well as those who consented to receive faxes from Brinks, including GM Sign." (*Id.*)

The Seventh Circuit has explained that one fails to establish typicality where there are significant factual differences between a prospective class representative's claims and those of the putative class members. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Such differences are problematic because the class representative "would have little incentive to litigate vigorously" whether facts relevant to certain of the class members, but to the representative, exist. *Id.* at 492-93. In the present case, Defendant argues that evidence of class members' having given consent precludes typicality. Under either of the proposed class definitions, however, G.M. Sign will have to establish that Brink's did not obtain consent before sending it, and other class members, the relevant faxes. Plaintiff thus meets the typicality requirement. *Cf. Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) ("[I]f [a plaintiff's] claim is atypical, he is not likely to be an adequate representative; his incentive to press issues important to the other members of the class will be impaired.") (citing *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

## IV. Adequacy

Rule 23(a)(4) makes it a prerequisite of certification that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Defendant does not dispute adequacy, and Plaintiff has established the same under Rule 23(a)(4). There is no evident reason why Plaintiff's interest in the outcome would be antagonistic to, or in conflict with, those of the other prospective class members. *See generally Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). Plaintiff has also established that its counsel are qualified.

Having thus met the adequacy requirement of Rule 23(a)(4), Plaintiff has satisfied the class-certification prerequisites of Rule 23(a). The Court finds, however, that Plaintiff fails to demonstrate that the proposed class meets the separate requirements of Rule 23(b).

## V. Plaintiff Fails to Establish that Common Questions of Law or Fact Predominate over any Questions Affecting only Individual Members for the Purpose of Rule 23(b)(3)

### A. Background Law

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions of law or fact must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A party seeking class certification must do more than simply claim that an issue predominates. *See Harper*, 581 F.3d at 515. Predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

### B. Plaintiff Has Not Demonstrated Predominance

Plaintiff argues that the proposed class satisfies Rule 23(b)(3)'s predominance requirement for the same reason that it meets the commonality requirement of Rule 23(a). (R. 46 at 14.) The Supreme Court has made clear, however, that "the predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). That higher threshold forecloses both of Plaintiff's proposed class definitions.

As noted, G.M. Sign points out a variety of common questions of law and fact, "including whether Defendant's fax form was an 'advertisement,' whether Defendant violated the TCPA by failing to obtain prior express consent; whether Defendant violated the TCPA by failing to include an opt-out notice on its form fax; whether class members are entitled to statutory damages; and whether Defendant's acts were 'knowing' under the TCPA[,] entitling class members to treble damages."  (R. 46 at 11-12.)  No doubt, common questions of the above kind would exist were the Court to certify the class, but that does not means that such questions predominate.  Under either proposed class definition, the Court cannot delineate the population of the class without making detailed, individual-specific determinations that foreclose predominance.

      **1.**      **Plaintiff Fails to Establish that the Class Definition Proffered in the Complaint Meets the Requirements of Rule 23(b)**

The definition articulated by the Complaint requires that class members (1) not have provided Defendant consent to receive the relevant faxes and (2) not have an established business relationship with Defendant.  (R. 1 at 8, ¶ 16.)  As noted above, Brink's has introduced evidence that it elicited consent from every recipient that was not already a customer.  (R. 55-1 at 2-4, 8-9, 15-16, 18, 20, 22.)  It has also proffered evidence that every other recipient was an established customer.  (*Id.*)

Based on the evidence submitted by Brink's, were the Court to certify the Complaint's proposed class, it would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time.  The relevant question is whether this inquiry means that

individualized questions predominate over common questions of law or fact.  The Court finds

that, on the facts of this case, they do.

Plaintiff points to several cases in which courts in this district have certified TCPA

cases.[3]  Of course, the question whether common questions predominate is necessarily a case-

specific one.  *See, e.g.*, *New England Carpenters Health Benefits Fund v. First Databank, Inc.*,

244 F.R.D. 79, 84 (D. Mass. 2007) ("[A]s a practical matter, a district court must engage in  a

case-specific analysis that goes outside the pleadings in order to 'formulate some prediction as to

how specific issues will play out in order to determine whether common or individual issues

predominate in a given case.'") (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288,

298 (1st Cir. 2000)).  Ultimately, the facts in this case are distinguishable from Plaintiff's cited

cases because Defendant has put forth evidence that it obtained the consent of Plaintiff and the

other non-pre-existing-customer recipients of the faxes before sending them.  They are also

distinguishable because Defendant has proffered evidence that the other recipients of the faxes

were pre-existing customers.  This evidence reveals that Plaintiff could not prove its case, or

establish the population of the Complaint's proposed class definition, by generalized proof.

The present case is similar to one addressed by the U.S. Court of Appeals for the Fifth

Circuit.  *Gene & Gene L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318 (5th Cir. 2008).  In *Gene*, the Fifth

---

[3] (R. 46 at 9-10 (citing *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008); *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *Green v. Service Master*, No.. 07-CV-4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009); *Holtzman*, 2010 WL 3076258 (Aug. 3, 2010); *G.M. Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010); *Sadowski v. Med1 Online, L.L.C.*, 2008 WL 2224892 (N.D. Ill. 2008).)

Circuit reversed, on the basis of predominance, a district court's class certification in a purported

class action brought under the TCPA by the recipient of unsolicited fax advertisements. *Id.* The

court explained that the district judge had mistakenly concluded that the case "would not

degenerate into a series of individual trials." *Id.* at 326. The Fifth Circuit concluded that "one

substantive issue undoubtedly will determine how a trial on the merits will be conducted if the

proposed class is certified," which the court identified as being whether defendant's "fax

advertisements were transmitted without the prior express invitation or permission of each

recipient." *Id.* The court noted that "the predominant issue of fact is undoubtedly one of

*individual* consent." *Id.* at 327 (emphasis in original). It further noted that the evidence revealed

that the defendant had "culled fax numbers from a variety of sources over a period of time, such

that class-wide proof of consent is not possible . . .." *Id.* at 329. The court concluded that the

plaintiff had "failed to advance any viable theory employing generalized proof concerning the

lack of consent with respect to the class . . . this leads to the conclusion that myriad mini-trials

cannot be avoided." *Id.* As a result, the Fifth Circuit found that the district court had abused its

discretion in certifying the class. *Id.*

     *Gene* is instructive because it differs from the present case only insofar as the plaintiff-

specific inquiry relates to the existence of a prior business relationship, as well as consent. As in

*Gene*, it seems unavoidable that the Court would have to conduct a series of mini-trials to

determine the facts of prior business relationships and consent. It would have to do so both to

establish the population of the class, and to determine liability. Given the evidence put forward

by Plaintiff, the Court cannot conclude that the proposed class meets the predominance

condition.  *See also Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997)*;*

*Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995).

Plaintiff cites decisions in this district that have declined to follow *Kenro*.  *See, e.g.*, *G.M.*

*Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08-CV-4521, 2010 WL 744262, at *4 (N.D. Ill. Feb.

25, 2010) (characterizing *Kenro* as being of "diminished authority"); *Hinman v. M & M Rental*

*Cent., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008); *Foreman v. PRA III, L.L.C.*, No. 05-CV-

3372, 2007 WL 704478, at *6 (N.D. Ill. Mar. 5, 2007).  The theme of these cases, however, is

that the relevant defendant had distributed faxes in such a way that consent was not an issue.  As

noted, the present case is readily distinguishable.

*Group C*, for example, premised its decision on the vagueness of the proffered defense of

consent.  *Group C*, 2010 WL 744262, at *4.  Specifically, with respect to the question of

predominance under Rule 23(b)(3), the court opined:

> All claims depend on proving Group C sent those faxes and that such conduct
> violates the TCPA.  Although Group C makes vague assertions about potential
> individual issues of consent, these hypothetical defenses do not overcome the
> predominance of common questions of law and fact among potential class
> members.

*Group C*, 2010 WL 744262, at *4.  In the present case, by contrast, the questions of consent and

prior business relationships are far from hypothetical.  Defendant in the instant case does not

make "vague assertions" about the nature of prior business relationships and consent, but has

offered specific evidence of the same.

Similarly, *Hinman* declined to follow *Forman* and *Kenro*, instead agreeing with the

Illinois Court of Appeals' analysis in *Travel 100.  Hinman*, 545 F. Supp. 2d at 806 (citing *Travel*

*100 Grp. v. Empire Cooler Serv.*, No. 03-CH-14510, 2004 WL 3105679 (Ill. Cir. 2004)). The

Illinois court had characterized *Forman* and *Kenro* as belying:

> a misunderstanding of telephone facsimile advertising as alleged in the complaint
> and materials supporting the instant Motion. Those courts seem to resolve the
> matter based upon a belief that this form of messaging is occasional or sporadic
> and not an organized program. To the contrary, the facts before this Court yield
> that this Defendant engaged a third party to send more than 3,000 facsimiles to
> targeted business. The manner in which the Defendant identified these recipients
> will not require individualized inquiry.

*Id.* at 806 (quoting *Travel* 100, at *3). That rationale—though appropriate for the context in

which it was expressed—is inapplicable to the present case. There is no evidence that Defendant

engaged a third party to distribute faxes. There is evidence, however, that Defendant obtained

consent from each non-customer recipient. Individual questions predominate in the instant case

because, if the Court were to certify the proposed class, it would have to determine whether each

prospective class member gave consent or had an existing business relationship with Defendant.

Unlike the facts of *Travel 100*, those determinations would most certainly require individualized

inquiry.[4]

In addition, *Foreman* distinguished *Kenro* on the basis that, "unlike in *Kenro*, the class

definition does not so closely track the language of the relevant statute . . . as to indicate that

evaluating class membership will be equivalent to deciding the merits of class members'

---

[4] Furthermore, the district court in *Hinman* supported its conclusion by reference to the Seventh
Circuit decision in *Keele*, which held that a proposed class meets the commonality requirement
of Rule 23(a) "where . . . the defendants have engaged in standardized conduct toward members
of the proposed class . . .." *Hinman*, 545 F. Supp. 2d at 806; *Keele v. Wexler*, 149 F.3d 589, 594
(7th Cir. 1998). Of course, the Court in the present case has already determined that the
proposed class definitions meet the commonality requirement of Rule 23(a). Instead, the Court
finds that Plaintiff has failed to establish the "far more demanding" predominance requirement of
Rule 23(b)(3). *Amchem*, 521 U.S. at 624.

claims." *Foreman*, 2007 WL 704478, at *6. In the present case, of course, the proposed class definition does closely track the language of the relevant statute. In many respects, the Court's demarcating the boundaries of the class, and identifying the individuals who comprise it, would be tantamount to resolving the merits of the underlying action.

Finally, a very recent opinion by a court in this district, which certified a class in a case brought by the recipient of unsolicited fax advertisements, is also distinguishable. *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-CV-5959, 2010 WL 4931001, at *2-3 (N.D. ll. Nov. 29, 2010). In that case, the district judge explained the basis for his ruling on predominance as being "for the reasons just stated" with respect to typicality. *Id.* at 3. Those reasons stemmed from the fact that "[t]he manner in which [defendant] obtained and used the fax numbers likely rules out the possibility of individualized consent defenses." *Id.* at 2. The judge continued by explaining that the defendant "appears to have purchased its fax numbers from a commercial source, and based on the depositions of its personnel, it took no steps to obtain or verify consent but rather just broadcast advertisements to the recipients. Given these circumstances, consent is highly unlikely to be an issue. . . . [Defendant] has offered nothing to suggest that any of the recipients might have consented to receive faxed advertisements." *Id.* at 2.

In contrast, Brink's has introduced evidence not only that the recipients of the relevant faxes consented to receive them, but that those recipients were in an established business relationship with it. The evidence in the record suggests that the Court would have to determine the fact of consent and the existence of a business relationship by reference to the characteristics of individual prospective class members. Plaintiff has failed to establish that the Court could

determine the facts of consent and an existing business relationship largely, or solely, by reference to Defendant's practices alone.

### 2. Plaintiff Fails to Establish that the Class Definition Proffered in its Motion Meets the Requirements of Rule 23(b)

The class definition advocated by Plaintiff's brief omits reference to a pre-existing business relationship, but, like the Complaint's proposed definition, requires that class members did not give consent. (R. 46 at 9.) As a result, the new class definition does not avoid the lack-of-predominance issues highlighted above. If the Court were to adopt this definition, it would have to determine, with respect to each prospective class member, whether it gave consent. Plaintiff has not introduced evidence showing that Defendant engaged in "fax blasting" in a common manner toward all or most recipients. To the contrary, Defendant's affidavits demonstrate that Brink's obtained consent from each non-customer recipient before sending the relevant fax advertisement.[5]

As Plaintiff has failed to establish that the proposed class meets the predominance requirement of Rule 23(b)(3), there is no reason for the Court to consider the other conditions of certification under that provision.

---

[5] Plaintiff's alternatively defining the class as all persons who "gave Defendant prior express invitation or permission but were sent faxes without an opt-out notice on them" does not satisfy the predominance requirement. (R. 46 at 9.) The class definition's use of "or" between the third and fourth "elements" would require the Court to include both fax recipients who did not give consent and those who gave consent, but received faxes without opt-out notices. As written, "or" suggests the inclusive combination of alternatives and, for that reason, it does not cure the deficiencies associated with "consent."

## CONCLUSION

For the reasons explained above, the Court denies Plaintiff's motion for class certification without prejudice.


Dated: January 25, 2011

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**